UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SEAN H.,[1]

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

23-CV-680-LJV
DECISION & ORDER

---

On July 12, 2023, the plaintiff, Sean H. ("Sean"), brought this action under the Social Security Act ("the Act"). Docket Item 1. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] *Id.* On October 11, 2023, Sean moved for judgment on the pleadings, Docket Item 6; on November 13, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 7; and on November 27, 2023, Sean replied, Docket Item 8.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Sean applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). One category of persons eligible for DIB includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court grants Sean's motion in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I.   THE ALJ'S DECISION

On September 20, 2022, the ALJ found that Sean had not been under a disability since February 1, 2018, his alleged onset date. *See* Docket Item 5 at 22–23. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a). *See id.*

At step one, the ALJ found that Sean had not engaged in substantial gainful activity since his alleged onset date. *Id.* at 23. At step two, the ALJ found that Sean suffered from three severe, medically determinable impairments: anxiety disorder, depressive disorder, and personality disorder. *Id.*

At step three, the ALJ found that Sean's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 24. More specifically, the ALJ found that Sean's mental impairments did not meet or medically equal listing 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), or 12.08 (personality and impulse control disorders). *Id.* In assessing Sean's mental impairments, the ALJ found that Sean was: (1) mildly impaired in understanding,

3

remembering, or applying information; (2) moderately impaired in interacting with others; (3) mildly impaired in concentrating, persisting, or maintaining pace; and (4) moderately impaired in adapting or managing himself. *Id.* at 24–25.

The ALJ then found that Sean had the residual functional capacity ("RFC")[4] to "perform work a full range of work at all exertional levels" except that:

> [Sean] can have occasional interaction with co-workers, supervisors[,] and the public, and he would be off[ ]task between five and seven percent of an eight-hour day.

*Id.* at 25–26.

At step four, the ALJ found that Sean no longer could perform any past relevant work. *Id.* at 28. But given Sean's age, education, and RFC, the ALJ found at step five that Sean could perform substantial gainful activity as a hand packager, cleaner, or production assembler. *Id.* at 28–29; *see Dictionary of Occupational Titles* 920.587-018, 1991 WL 687916 (Jan. 1, 2016); *id.* at 323.687-014, 1991 WL 672783 (Jan. 1, 2016); *id.* at 706.687-010, 1991 WL 679074 (Jan. 1, 2016). The ALJ therefore found that Sean had not been under a disability from February 1, 2018, through September 20, 2022, the date of decision. *See* Docket Item 5 at 29.

## II.   ALLEGATIONS

Sean argues that the ALJ erred in two ways. Docket Item 6-1 at 10–14. More specifically, Sean argues that "[t]he ALJ failed to explain the medical basis for the very

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

4

specific off-task limitation included in the RFC finding," *id.* at 10–12, and that the ALJ "failed to properly evaluate the opinion evidence," *id.* at 10, 13.  This Court agrees that the ALJ erred and, because that error was to Sean's prejudice, remands the matter to the Commissioner.

### III.   ANALYSIS

If an ALJ includes a "highly[ ]specific" limitation in a claimant's RFC, that limitation cannot come from whole cloth.  *See Tomicki v. Berryhill*, 2018 WL 703118, at *5 (W.D.N.Y. Jan. 11, 2018).  In other words, when a medical provider opines about a specific limitation, an ALJ cannot arrive at some lesser specific limitation unless that lesser limitation finds support in the medical record.  *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).  Therefore, when a provider finds that a claimant will be off task for up to a specific amount of time and the record provides no support for some lesser time, a specific finding of some lesser time is not supported by substantial evidence.  *See Tomicki*, 2018 WL 703118, at *5 ("[T]he record does not support the ALJ's conclusion that [the claimant] needs to briefly switch between sitting and standing only every thirty minutes.  The ALJ did not cite any evidence to support this highly[ ]specific sit-stand option . . . Moreover, there is evidence in the record indicating that [the claimant] needs to change positions every few minutes, not every thirty minutes.").

For example, in *Tara W. v. Comm'r of Soc. Sec.*, 2021 WL 4316824 (W.D.N.Y. Sep. 23, 2021), this Court remanded when an ALJ found that the "[p]laintiff can be off task 5% of the day" but "failed to explain *where* that specific percentage of 5% came from, or why he assessed that percentage as opposed to one higher or lower."  2021 WL 4316824, at *3 (emphasis in original) (citing *Mariani v. Colvin*, 567 F. App'x 8, 10

5

(2d Cir. 2014) (summary order)).  Likewise, in *Ramon H. v. Comm'r of Soc. Sec.*, 2024 WL 4448900 (W.D.N.Y. Oct. 9, 2024), this Court remanded because the record lacked "any specific evidence to support that Plaintiff would be off[ ]task only 5% of a workday . . . as opposed to 10% or 15% or 18%."  2024 WL 4448900, at *3; *see also Wouters v. Comm'r of Soc. Sec.*, 2020 WL 2213896, at *3 (W.D.N.Y. May 7, 2020) (remanding where the ALJ did not "point to any evidence in the record suggesting why [the p]laintiff would be off[ ]task for [5% of the] time.").

Here, Amy Hamilton, Ph.D., was the only medical professional to opine about time off task, and she found that Sean would be off task "less than [ten percent] of the time."  Docket Item 5 at 1312.  In other words, she opined that Sean might be off task as much as nine percent of the time or even a bit more.  But the ALJ found that Sean "would be off[ ]task between five and seven percent of an eight-hour day."  Docket Item 5 at 26.  Why the ALJ chose that range—rather than, say, three to five percent or seven to nine percent—is anyone's guess.  And by choosing some lesser limitation not supported by the record, the ALJ erred.  *See Milliken v. Berryhill*, 2017 WL 3208635, at *17 (W.D.N.Y. July 28, 2017) ("The ALJ does not point to any indication in the record as to why this particular duration would permit [the claimant] to finish forty hours of light work a week."); *Sherylrica Q. v. Comm'r of Soc. Sec.*, 2023 WL 6591754, at *4 (W.D.N.Y. Oct. 10, 2023) ("[The ALJ] did not tie [the] specific limitation to the finding of any provider or, indeed, even suggest where it came from.").  Stated another way, without any indication as to how the ALJ crafted the limitation, this Court can only conclude that it was based on the ALJ's surmise.  And that was error.

6

What is more, this Court cannot conclude that the ALJ's error was harmless. While the vocational expert provided jobs consistent with the off-task limitation in the RFC, *see* Docket Item 5 at 384–85, it is not clear from the record that a different off-task percentage—seven to ten percent, for example—would not alter the vocational expert's analysis. *See Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order) ("[T]he vocational expert's opinion on whether there were jobs [the claimant] could perform varied depending on how the off-task time was defined."); *Edwards v. Comm'r of Soc. Sec.*, 2020 WL 4784583, at *4 (W.D.N.Y. Aug. 18, 2020) ("The [vocational expert] testified that, if the off-task time was ten percent or more, the limitation would be 'work preclusive.' Accordingly, the Court cannot say that the ALJ's failure to tether the percent of off-task time to evidence in the record was harmless error." (internal citation omitted)).

The Commissioner argues that "even 'highly specific' RFC findings need not be tied to a medical opinion." *See* Docket item 7-1 at 18. And that is largely true. For example, when no medical provider opines about a specific amount of time that a claimant will be off task, an ALJ does not err by choosing a specific off-task time to give the claimant "the benefit of the doubt." *See Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020); *Jessica W. v Comm'r of Soc. Sec.*, 2022 WL 345096, at *4–5 (W.D.N.Y. Feb. 4, 2022) (explaining that "a medical opinion is not required for every limitation," and that, in any event, the ALJ provided substantial support for a 10% off-task limitation by citing the claimant's "attention/concentration lapses" and affording her the benefit of the doubt). Likewise, when there is record evidence supporting a highly specific limitation, the ALJ does not err by crediting that

7

evidence and including that limitation in the RFC.  See *Thaddeus D. v. Comm'r of Soc. Sec.*, 2023 WL 4352940, at *3 (W.D.N.Y. July 5, 2023) ("Case law has held that where treatment notes are in line with a RFC finding, an ALJ can craft a highly specific RFC finding absent a medical opinion."); *Thomas S. v. Comm'r of Soc. Sec.*, 2021 WL 1293105, at *4 (W.D.N.Y. Apr. 7, 2021) ("Overall, although the ALJ's 5% off-task limitation did not directly correspond to a medical opinion in the record, the ALJ's determination was supported by substantial evidence. In concluding that Plaintiff would be off-task 5% of the workday, the ALJ relied on the record as a whole, including medical opinion evidence, objective mental status examinations, and Plaintiff's testimony concerning his daily activities.").  And, of course, an ALJ is free to reject a medical provider's specific limitation by providing reasons why that limitation is not supported by the record.  See *Schillo v. Kijakazi*, 31 F.4th 64, 77 (2d Cir. 2022) ("An ALJ may, however, discount a[n] . . . opinion if it is not supported by substantial evidence.").

But when the record contains a highly specific limitation, the ALJ may not choose some lesser limitation without a medical opinion or some other evidence that supports that limitation.  See *Mariani v. Colvin*, 567 F. App'x 8, 10 (2d Cir. 2014) (summary order) ("[T]he ALJ was not . . . permitted to arbitrarily substitute his own judgment for competent medical opinion." (internal quotation marks omitted)).  And the ALJ did just that here.

In sum, the ALJ erred in crafting a highly specific RFC limitation without explaining where, if anywhere, that limitation came from.  See *Tomicki v. Berryhill*, 2018 WL 703118, at *5 (W.D.N.Y. Jan. 11, 2018); *Jordan v. Berryhill*, 2018 WL 5993366, at

8

\*3 (W.D.N.Y. Nov. 15, 2018) (requiring a "tether between [the ALJ's] RFC and the non-stale medical opinions or statements from [the] plaintiff"). And because that error was not harmless, remand is required. *Tara W. v. Comm'r of Soc. Sec.*, 2021 WL 4316824, at \*4 (W.D.N.Y. Sep. 23, 2021).[5]

## CONCLUSION

The Commissioner's motion for judgment on the pleadings, Docket Item 7, is DENIED, and Sean's motion for judgment on the pleadings, Docket Item 6, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:   November 4, 2025
         Buffalo, New York

                                          */s/ Lawrence J. Vilardo*
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE

---

[5] The Court "will not reach the remaining issues raised by [Sean] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see Beers v. Comm'r of Soc. Sec.*, 449 F. Supp. 3d 96, 103–04 (W.D.N.Y. 2020).